## CHARLES A. HIGGINS *vs.* PORTLAND RAILROAD COMPANY.

### Cumberland.    Opinion September 20, 1909.

*Street Railroads*.    *Negligence.    Proximate Cause.    Newly-Discovered Evidence.*

Where in an action on the case to recover damages for personal injuries sustained by the plaintiff and for injury to his property caused by a collision between an electric car of the defendant and the plaintiff's truck wagon, and the verdict was for the defendant and the plaintiff filed a general motion for a new trial also a special motion based on the ground of newly-discovered evidence,

*Held* 1.    That the evidence utterly failed to support the only allegation of negligence contained in the writ, namely, that the car was being driven at a "high, rapid and excessive rate of speed."

2.    That it was the duty of the plaintiff to use due care in so placing his team as not to obstruct the passage of the defendant's cars, and having placed it he impliedly invited the employees to pass if there was ample space. From the attitude and conduct of the team they had a right to assume that the plaintiff had so placed it that it would not move.

3.    That the evidence abundantly proved that the proximate cause of the accident was the moving of the horse and the consequent throwing of the wagon top against the car, and that the wagon ran into the car, and not the car into the wagon.

4.    That whether the injury was caused by the want of due care on the part of the plaintiff in not properly placing his team or not trigging the wheels to prevent their moving, or whether it was due to an accident for which neither party was responsible, it was not necessary to determine but it certainly could not be attributed to any negligence on the part of the defendant or its servants.

5.    That the newly-discovered evidence was not of such kind or strength as to demand a new trial under the rule well settled in this State.

On motions by plaintiff.    Overruled.

Action on the case to recover damages for personal and property injuries received by the plaintiff and caused by the alleged negligence of the defendant.    Plea, the general issue.    Verdict for defendant. Plaintiff filed a general motion for a new trial and also a special motion for a new trial on the ground of newly-discovered evidence.

The case is stated in the opinion.

*H. & W. J. Knowlton,* for plaintiff.

*Libby, Robinson & Ives,* for defendant.

SITTING:   WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

CORNISH, J. . The plaintiff asks to have a verdict for the defendant, in an action on the case for negligence, set aside as against the evidence and also on the ground of newly-discovered evidence.   The case arises out of a collision between the side of one of the defendant's electric cars and the top of the plaintiff's truck wagon, the plaintiff who was standing at the rear of the wagon being struck by the top, in its fall, and injured.   The situation as revealed by the evidence was this.

The accident occurred in the forenoon of April 27, 1908 on Middle street in the city of Portland, one of the principal streets of the city, with electric cars passing very frequently.   The track at this point, and for about 100 feet above, was straight with a five per cent grade.   The plaintiff, a truckman, drove up the left hand side of this street between the sidewalk and the track, with his team heavily loaded with merchandise for delivery at various points, and stopped in front of the Homsted Store for delivery there.   The space between the curb stone and the nearest rail at that point was too narrow to allow the team to be placed at right angles with the street, the distance being twelve feet and three inches while the length of the body of the wagon alone was about thirteen feet.   The plaintiff therefore placed his wagon so that the rear hind wheel was backed firmly against the curb stone, the body of the wagon standing diagonally towards the track, and the horse was swung around sharply toward the sidewalk on the left and in the direction from which the cars came.  · The wagon was of the style known as a cut under, the forward wheels turning beneath the body without any interference with the sides, and had a top supported by four stakes one at each corner of the body, and projecting about six inches over the supports.

With the team in this position the plaintiff began to unload the Homsted merchandise and two cars passed without obstruction while this was being done.   He finished and was about to step upon the team and drive up the street to another store, when a third car, the one in question, came down the track.   About four-fifths of

this car also had passed when the top of the wagon came in contact with the side of the car about eight feet from the ground and seven feet from the rear of the car with the result before described.

The jury have found no liability on the part of the defendant and it is the opinion of the court that the verdict was not erroneous.

The only allegation of negligence in the writ is the "high, rapid and excessive rate of speed" at which the car was being driven, but the evidence entirely fails to support this contention. The car had stopped for a passenger to alight at a point about 115 feet from the wagon and then proceeded slowly a short distance when the motorman, seeing the team, stopped again and looked out the side of the forward vestibule to ascertain if there was ample clearance and saw that there was. The conductor testified that when the car stopped this second time without signal from himself, he looked out of the rear vestibule to ascertain the cause and observed the team. He sighted along the side of the car to the top of the wagon and deciding that there was ample room, he gave the signal to go ahead, which was done, and no difficulty was experienced until almost the entire car had passed.

Certainly the jury were justified if they believed this evidence, and it commends itself to the court as honest and truthful, in finding that the servants of the defendant used that degree of watchfulness and care which the law requires. Both parties had a right to the reasonable use of the street and upon both the law placed certain duties and obligations. It was the duty of the plaintiff to use due care in so placing his team as not to obstruct the passage of the defendant's cars, a duty which he himself apparently recognized, because he testifies that he "swung the horse around so as to clear the cars so they could come down by." "Electric street cars have, in a qualified way at least, the right of way as against persons on foot or travelling with carriages and teams in the same manner as ordinary steam railroads have. And all persons passing on foot or travelling by the common methods on the highway should carefully observe the movements of the street cars and leave them unobstructed passage as well as they reasonably can." *Flewelling* v. *R. R. Co.,* 89 Maine, 585; *Atwood* v. *Railroad Co.,* 91

Maine, 399. On the other hand it was the duty of the motorman and conductor to use due care in the management of their car in order to avoid injury to the plaintiff's team. Vigilance was required of them, and even though the plaintiff had been negligent in placing his team, that would not excuse them in running into it if a collision could have been avoided by the exercise of reasonable care on their part. Whether the plaintiff fulfilled his duty is a matter of some doubt. He had control of the team and could have placed it in such position as he saw fit. He could have located it parallel with the sidewalk, or could perhaps have trigged the forward wheels to prevent the wagon moving. Doubtless he thought he had allowed ample room for passage, and he had if the team remained stationary. Whether he was guilty of contributory negligence in not adopting further precautions it is unnecessary to decide.

But there is certainly no evidence of failure of duty on the part of the defendant's servants that would warrant the reversal of the verdict of a jury whose sympathies would naturally be with the plaintiff rather than with the defendant, a corporation. Both the conductor and the motorman acted with admirable caution. From the attitude and conduct of the team they had a right to assume, if there was ample space to clear it, that the plaintiff had so placed it that it would not move. He impliedly invited them to pass and they had a right to accept the invitation provided the space was ample. Their judgment on that point was confirmed because nearly the whole car moved safely by before the contact. What took place then? One of the vehicles must have changed its position. It could not have been the car because that was moving on a fixed straight course without lateral motion. It must have been the wagon and the evidence of two disinterested witnesses prove that to have been the fact. A passenger saw the top of the wagon settle back into the car just as it was opposite the window at which he was sitting, and a bystander saw the cause of this change, as he noticed the horse step to one side and then settle back producing the movement of the wagon top and the contact with the car.

This is the key to the accident and forces the inevitable conclusion that the wagon ran into the car and not the car into the wagon.

The collision may have been due to the plaintiff's want of care or perhaps to accident, but certainly it cannot be attributed to any negligence on the part of the defendant or its servants.

The general motion cannot be sustained.

The newly-discovered evidence is not of such kind or strength as to demand a new trial under the rule laid down by this court in the recent cases of *Parsons* v. *Railway Co.*, 96 Maine, 503 ; *Mitchell* v. *Emmons*, 104 Maine, 76.

*Motions overruled.*